**UNITED STATES of America, Plaintiff,**

v.

**ONE 1951 DOUGLAS DC–6 AIRCRAFT, et al., Defendants.**

**Ernesto ZARAGOZA Y., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Nos. 78–2418, 79–2118.

United States District Court,
W. D. Tennessee, W. D.

Dec. 12, 1979.

**14**

Devon Gosnell, Asst. U. S. Atty., Memphis, Tenn., for USA in both cases.

Michael J. Meehan, Tucson, Ariz., for plaintiff in No. 79–2118.

Richard D. Burris, Tucson, Ariz., for Est. of Brian Corp.

Allan Neef, Detroit, Mich., for Cryderman Air Service.

## MEMORANDUM OPINION

WELLFORD, District Judge.

### FINDINGS OF FACT

Ernesto Zaragoza, a Mexican national and a substantial entrepreneur, made loans totalling $125,000 to Brian Corp, advancing the money to him in installments prior to March 2, 1975, for the purpose of construction by Corp of a home in Tucson, Arizona.[1] Corp signed and delivered to Zaragoza a promissory note, dated March 2, 1975, and a Deed of Trust dated March 2, 1975, upon the real property where the house was constructed. Zaragoza subsequently visited the site of construction, but only on one or two occasions, and found that construction was taking place at the site. The loan by Zaragoza to Corp was prompted by the request of Zaragoza's son, David, who had been taking flying lessons from Corp during his high school days. Corp and David Zaragoza had been involved in an airplane crash at Guaymas, Mexico, in which the father believed Corp had been instrumental in saving his son's life.

Corp fell behind in making note payments when due, and Zaragoza requested further collateral. It was not until March 15, 1977, that Corp signed and delivered to Zaragoza a security agreement covering the DC–6A Aircraft N2901F, which is the subject of this action. Corp had obtained this plane from Cryderman Air Service, Inc., and placed it in the name of Executive Leasing.

Zaragoza said Corp told him he was going to haul fresh fish and shrimp to Los Angeles and Las Vegas; Zaragoza was going to help Corp get started in the business because he had shrimp interests in Mexico. Zaragoza testified he had no knowledge of Corp's involvement in drugs, although his son, David, was arrested in 1974 for possession of marijuana for sale while in Tucson, and he knew that Corp by June or July of 1977 had been hired as a pilot and had been "in trouble" with the narcotics authorities.

1. Zaragoza stated that he loaned Corp $65,000 on March 2, 1975, and subsequently loaned Corp an additional $60,000.

Zaragoza, however, stated he first learned that Corp had used the airplane in drug traffic in April, 1978, at the funeral for Corp and David Zaragoza, killed in a mysterious plane crash in Mexico.

Ernesto Zaragoza himself was not involved in any utilization of the said DC–6 Aircraft for any customs law violations or other illegal activities, but it seems likely that his son may have been. Zaragoza did not learn that the DC–6 Aircraft upon which he was given security interest had been seized by the United States Government until the Spring of 1978.

Later, in 1978, Zaragoza learned that the Deed of Trust given to him on the Arizona land (the house site) might not perfect an interest in the entire proceeds of any sale of the house because title to same was held by Corp in joint tenancy with his mother, with right of survivorship. Upon consulting with a lawyer in Mexico, he then forwarded the security agreement to the FAA on June 2, 1978. Zaragoza was involved in many business activities and frequently came across the border to the United States; he was accustomed to the Mexican law with respect to recording collateral security instruments, an expensive procedure there. He claims this to be the reason he did not send the security agreement to the FAA at the time he originally received it.

The security agreement itself contains a general prohibition against the use of the collateral, the DC–6, in any manner that would violate any law.

Zaragoza attempted to place no restriction on Corp's use of the airplane even though he was aware of his son's prior involvement in drugs and his continuing close association with Corp, whose means of livelihood were, at best, doubtful. He also made no effort to check on the status of the plane after he knew Corp as a pilot had been involved in difficulty with the narcotics laws. Zaragoza did not even investigate to determine if Corp was the owner of the aircraft, or whether there was a proper transfer of ownership to him or his designee. Nor did Zaragoza check the status of

Corp's pilot license to discover that Corp was not rated to fly the DC–6 or to instruct his son, David, in flying an aircraft.

## CONCLUSIONS

1. In order to prevail, Zaragoza must, among other things, establish not only that he was

uninvolved in or unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property. . . .

*Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974).

2. This Court has jurisdiction to consider the claims and defenses of plaintiff Zaragoza pursuant to 28 U.S.C. § 1331.

3. Ernest Zaragoza has and had a security interest in DC–6A Aircraft No. 51–17645, Registration No. N–2901F, by virtue of the security agreement, dated March 15, 1977, to secure a prior loan. This security interest was not perfected at any time prior to the commission of the illegal act which led to seizure of said aircraft by the government.

4. Zaragoza contends that to allow the forfeiture of the DC–6 Aircraft in derogation of his security interest would deprive him of property without due process of law, in violation of the Due Process Clause of the Fifth Amendment, because of the delay by the responsible officers of the United States Customs Service and of the United States Attorney, in instituting forfeiture procedures. This Court has heretofore denied Zaragoza's summary judgment motion on that issue.[2]

5. The non-recording of Zaragoza's security interest in the DC–6 Aircraft with the FAA before the seizure by the United States defeats Zaragoza's right to contest the forfeiture. Under 49 U.S.C. § 1403(c) no interest in an aircraft is valid against anyone other than the conveyor of the interest until the security interest hold-

---

2. *United States v. One 1951 Douglas DC–6 Aircraft*, 475 F.Supp. 1056 (W.D.Tenn.1979).

er records it with the FAA. The government's interest in the plane vested upon commission of the illegal act. Although this interest will not be perfected until judicial condemnation, perfection, once obtained, relates back to the earlier vesting and avoids all interests arising in the interim. *United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890); *Ivers v. United States*, 581 F.2d 1362 (9th Cir. 1978); *Simons v. United States*, 541 F.2d 1351 (9th Cir. 1976).

6. The Court has found that the government seizure was proper under the probable cause test. *United States v. One 1975 Mercedes 280S*, 590 F.2d 196 (6th Cir. 1978). Therefore, because Zaragoza's secured interest was not perfected prior to the vesting of the government's interest, Zaragoza's interest must yield regardless of whether he satisfied the *Calero-Toledo* requirement that he had no knowledge of the criminal activity and that he did everything that could reasonably be expected to prevent such activity. *See* 416 U.S. at 689–90, 94 S.Ct. at 2094–2095.

7. Further, Zaragoza was careless and not diligent in protecting his security interest in the plane; in failing to take effective and affirmative steps to see that a properly licensed pilot operated it; that it was not involved in illegal narcotic traffic; and that it was properly registered with United States authorities, including his security claim as collateral.

Accordingly, Zaragoza's claim of intervention must fail. The forfeiture and sale of the plane by the United States is authorized and approved.