**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**$47,875.00 IN UNITED STATES
CURRENCY, Defendant,**

**Wardell A. Lucas and Maggie J. (Jo)
Lucas, Claimants-Appellants.**

**No. 83–1431.**

United States Court of Appeals,
Fifth Circuit.

Nov. 15, 1984.

Rehearing Denied Dec. 14, 1984.

Frank D. McCown, Fort Worth, Tex., for claimants-appellants.

Edward C. Prado, U.S. Atty., Jack B. Moynihan, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before JOHNSON, JOLLY, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

This is an appeal from a judgment of forfeiture, pursuant to 21 U.S.C. § 881(a)(6), of $47,875 in United States currency. Claimants, Wardell A. and Maggie J. Lucas, contend that they are the innocent owners of $32,500 of the forfeited money and that the district court erred in imposing an affirmative duty upon them to prevent the proscribed use of their money.[1] We need not decide this issue, however, because claimants have not established that they are "owners" for section 881(a)(6) purposes, and therefore they cannot contest the forfeiture.

## I. COURSE OF PROCEEDINGS

The Government brought the complaint for forfeiture in district court alleging that $47,875 in currency had been forfeited to the United States by virtue of its intended use for the purchase of illicit drugs. The money was seized by agents of the Drug Enforcement Administration (DEA) from the possession of Randall W. Lucas and Barry Menting while Lucas and Menting were negotiating the purchase of eighty pounds of marijuana from undercover DEA agents in San Antonio, Texas.[2] Claimants, Randall Lucas' parents, filed an objection to the complaint for forfeiture in which they maintained that they were the sole owners of $32,500 of the seized currency and that they were unaware of the intended misuse of their money.[3]

At the forfeiture hearing, claimants proceeded on the theory that the $32,500 was provided to their son in furtherance of a

---

**1.** While the district court concluded that claimants had "proper legal title" to $32,500 of the respondent currency, and that they were uninvolved in and unaware of the proscribed activity, it found that they had not done all that could reasonably be expected to prevent the proscribed use of their money. In so holding, the district court relied upon the Supreme Court's decision in *Calero-Toledo v. Pearson Yacht Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). In that case, the Court upheld the constitutionality of a Puerto Rican forfeiture statute which was modeled after 21 U.S.C. § 881(a)(4). While approving the application of the statute to an innocent owner in that instance, the Court commented:

> It ... has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property....

416 U.S. at 689, 94 S.Ct. at 2094–95. Subsequent cases have interpreted the above dicta as imposing an additional substantive requirement that a claimant must prove in establishing his "innocent owner" defense. *See United States v. One 1977 Cherokee Jeep,* 639 F.2d 212, 213 (5th Cir. 1981); *United States v. One 1973 Buick Riviera,* 560 F.2d 897, 900 (8th Cir.1977); *United States v. One 1978 Chrysler LeBaron,* 531 F.Supp. 32 (E.D.N.Y.1981); *United States v. One Liberian Refrigerator Vessel,* 447 F.Supp. 1053, 1064–65 (M.D.Fla.1977), *affirmed,* 617 F.2d 136 (1980). Claimants argue that *Calero-Toledo* and the cases that have relied upon its dicta are distin-

guishable because they involve forfeitures of conveyances (i.e., vehicles, vessels, and aircraft) under section 881(a)(4), whereas the instant case arises under section 881(a)(6) which governs the forfeiture of money. The Lucases maintain that the two types of property should be accorded different treatment and that the *Calero-Toledo* test should not apply in cases involving the forfeiture of money. Because we hold that claimants lack standing to contest the forfeiture in the instant case, we leave the question of the applicability of the *Calero-Toledo* dicta to currency forfeiture cases for another day.

**2.** At the time of the forfeiture proceedings, Barry Menting had pleaded guilty to the substantive narcotics charges from which the complaint for forfeiture stemmed. The case against Randall Lucas, however, was still pending before a federal grand jury and no indictment had been returned. Claimants do not challenge the district court's holding that probable cause existed for belief that there was a substantial connection between the currency to be forfeited and the proscribed activity. *See United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 323 (5th Cir.1981).

**3.** In their objection to the complaint for forfeiture, the Lucases acknowledged that they were aware that their son Randall had been convicted of misdemeanor possession of marijuana when he was eighteen years of age, some eight years prior to the course of events in the instant case. They stressed, however, that they had no present knowledge of any criminal activity of Randall or Menting. Record Vol. 1 at 27.

joint venture. The plan for the contemplated use of the money and its repayment was described by Wardell Lucas as follows: Mr. and Mrs. Lucas would provide Randall with funds to purchase used oil drilling bits for the purpose of reconditioning and selling the reconditioned drill bits. Claimants obtained a $20,000 bank loan and withdrew an additional $12,500 from their personal savings account in order to finance the venture. Claimants transferred the entire sum to Randall in cash. Under the agreement, Randall and Menting were to use $32,000 to purchase the drill bits and $500 for miscellaneous expenses incurred in acquiring the bits. Following the sale of the reconditioned bits, $32,500 was to be returned to the Lucases, the interest on the bank loan was to be paid, and the interest lost from the savings account withdrawal was to be paid to claimants. In addition, profits, if any, were to be shared 50/50 between Randall and his parents. Randall was to share his portion of the profits with Menting.

The Government introduced evidence showing that at the time of claimants' agreement with their son, the market for used drill bits was almost nonexistent. There was also testimony to the effect that it is the normal business practice to use letters of credit or checks to purchase used drill bits, not cash.

In its conclusions of law, the district court found that Mr. and Mrs. Lucas had proper legal title to $32,500 of the respondent $47,875 and that they were uninvolved in and unaware of the wrongful activity of Randall and Menting. The court concluded, however, that forfeiture of the entire $47,875 was warranted because claimants "clearly did not do all they reasonably could have done to prevent the proscribed use of their money." Record Vol. 1 at 41.

## II. STANDING

The Government maintains that Wardell and Maggie Lucas lack standing to object to the forfeiture because they are not "owners" within the meaning of 21 U.S.C. § 881(a)(6). The statute provides:

## § 881. Forfeitures

### Property subject

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

      ✻     *     *     *     *     *

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, *except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.*

21 U.S.C. § 881(a)(6) (emphasis added). The term "owner" should be broadly construed to encompass any person with a recognizable legal or equitable interest in the property seized. JOINT EXPLANATORY STATEMENT OF TITLES II AND III, 1978 U.S.CODE CONG. & AD.NEWS 9496, 9522–23. This Court has held that a claimant seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of his standing to contest the forfeiture. *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($346,960.00) in United States Currency*, 661 F.2d 319, 326 (5th Cir.1981).

The Government would characterize the agreement between claimants and Randall as a loan and therefore argues that one who lends money retains no legal or equitable interest in the particular currency loaned as a result of the establishment of the debtor/creditor relationship. On the other hand, claimants assert that the arrangement was a joint venture.

Under Texas law, a joint venture must be based on either an express or implied agreement containing these essential elements: (1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise. *Coastal Plains Development Corp. v. Micrea, Inc.,* 572 S.W.2d 285, 287 (Tex.1978); *see Ayco Development Corp. v. G.E.T. Service Co.,* 616 S.W.2d 184, 186 (Tex.1981). Where any one of these elements is absent, no joint venture exists. Wardell Lucas' own testimony at the forfeiture hearing refutes claimants' contention that a joint venture existed. In response to questioning concerning the division of losses, Lucas stated: "Well, I would have probably had to stood the loss, because my son didn't have the money to stand the loss. He was t[r]ying to make money, but he wouldn't have had the money to have stood the loss. I would probably had to took the loss myself." Record Vol. 2 at 29. While there was some evidence of a community of interest, mutual right of control,[4] and an agreement to share profits, claimants presented no evidence whatsoever of an agreement to share losses. Thus, under well settled Texas jurisprudence, as a matter of law there was no joint venture in existence between claimants and their son. *See Sherrill v. Bruce Advertising, Inc.,* 538 S.W.2d 865, 866 (Tex.Civ.App.—Houston 1976, no writ); *see also Raybourn v. Lewis,* 567 S.W.2d 908, 911 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). Hence, claimants have failed to establish any recognizable legal interest in the seized currency. Nor do they advance any equitable theory upon which their status as section 881(a)(6) "owners" might be premised.

The claimants having failed to demonstrate a recognizable legal or equitable interest in the seized currency sufficient to satisfy the court of their standing to contest the forfeiture, the judgment of the district court is

AFFIRMED.

---

4. At the forfeiture hearing, Wardell Lucas testified that Randall was to purchase the drill bits in south Texas and that the bits would then be taken to Archer City, Texas, for refurbishing at a company called "Texas Bits." Lucas stated that he anticipated that Randall could purchase as many as 20 bits with the $32,000. Lucas was to help transport the bits in his pickup truck if Randall could not fit the drill bits into his own car. Record Vol. 2 at 25, 27, 47–8.