## UNITED STATES of America

### v.

## Christopher F. RECKMEYER, II, et al.

### Crim. No. 85–00010–A.

United States District Court, E.D. Virginia. Alexandria Division.

March 27, 1986.

Peter Van N. Lockwood, Caplin & Drysdale, Chartered, Washington, D.C., for petitioners.

Kent Robinson, Asst. U.S. Atty., Alexandria, Va., for U.S.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court on the Petition of the law firm of Caplin & Drysdale Chartered ("Caplin & Drysdale") who seek a modification of the forfeiture order entered by the court on May 17, 1985, to permit payment of defendant Christopher Reckmeyer's attorneys' fees. This case presents a conflict between the forfeiture of drug related assets under the Comprehensive Forfeiture Act of 1984 and a defendant's right to counsel under the Sixth Amendment to the Constitution. For the

reasons set forth below, the Petition is granted.

## I

The basic facts are not in dispute.

The law firm of Caplin & Drysdale began representing Christopher Reckmeyer in the summer of 1983, in connection with a grand jury investigation of drug trafficking activities in the Eastern District of Virginia which culminated in an indictment issued against Reckmeyer and twenty-five other individuals on January 15, 1985. As of December 31, 1984, Reckmeyer owed Caplin & Drysdale $26,444.97 for services rendered and costs incurred through that date.

On January 14, 1985, this court issued an Order pursuant to an *ex parte* application by the government which restrained the transfer of assets by Reckmeyer and others. On January 25, 1985, Christopher Reckmeyer surrendered. At his request, Caplin & Drysdale continued to represent him in his defense of the indictment. On March 14, 1985, Christopher Reckmeyer plead guilty to Count 2—engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848. He also plead guilty to Counts 26 and 31, which charged violations of Federal tax laws.

On March 15, 1985, oral argument was held before Judge Bryan of this court on Reckmeyer's motion filed on March 7, 1985, for an order modifiying the restraining order of January 14, 1985, to exclude attorneys' fees from forfeiture. Judge Bryan denied this motion on March 15, 1985, on the ground that Reckmeyer had plead guilty to Count 2 on the previous day. Judge Bryan stated, however, that Caplin & Drysdale could, on its own behalf, raise the issue of forfeitability of attorneys' fees in the context of a third-party petition.

On May 17, 1985, Reckmeyer was sentenced to a period of incarceration, and a Forfeiture Order was entered listing virtually all assets possessed by Reckmeyer, including real estate, gems and $200,000 in United States currency. The Forfeiture Order specifically included:

29. All monies and funds restrained by January 14, 1985, restraining order entered in the above styled case, including but not limited to the approximately $25,-000 held in escrow by Bernard S. Bailor [a member of the law firm of Caplin & Drysdale] and/or his agents.

Forfeiture Order dated 5/17/85.

In defending the charges against Reckmeyer, Caplin & Drysdale incurred the following expenses and time charges:

| | |
|---|---|
| a. Disbursement for the retention of Stanley J. Reed of Lerch, Early, Roseman & Frankel to assist in Reckmeyer's defense. Mr. Reed was retained in order to comply with the requirements of Canon 6, ABA Code of Professional Responsibility because Caplin & Drysdale was not experienced in defense of drug cases. (Exhibit G.) | $ 46,975.54 |
| b. Other disbursement in connection with the defense (duplicating, telephone, investigators, etc.) (Exhibit H). | $ 14,313.95 |
| c. Caplin & Drysdale attorney time charges. (Exhibit H). | $109,223.50 |
| Total Expenses | $170,512.99 |

In rendering these services to Reckmeyer, Caplin & Drysdale was a good faith provider of services for value. Caplin & Drysdale has not been paid for these charges because of the restraining and forfeiture orders which encompassed all of Christopher Reckmeyer's assets. Pursuant to 21 U.S.C. § 853(n)(2), Caplin & Drysdale filed its Petition to the court for a hearing to adjudicate the validity of their interest in the forfeited assets.

## II

Caplin & Drysdale argues that the forfeiture statute was not intended to reach legitimate attorney's fees, and therefore they are entitled to be paid the fees and costs incurred in representing Christopher Reckmeyer. They further argue that any construction of the forfeiture statute which reaches legitimate attorney's fees would violate a criminal defendant's Sixth Amendment Right to Counsel. The government argues that the attorneys only have standing to contest the forfeiture of $25,444.97

actually delivered to them by Reckmeyer but do not have standing to contest the balance owed by Reckmeyer. They further argue that the forfeiture statute can be plainly read to encompass attorney's fees and that the court should not order the government to pay the defendant's attorney of choice out of funds which rightly belong to the government under the relation-back principle of Section 853(c).

#### a. *Standing*

Under the Forfeiture Act, the disposition of third-party claims is governed by 21 U.S.C. § 853(n)(6). This section provides:

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

The government argues that petitioners do not have standing to contest the Order of Forfeiture under Section 853(n)(6). The government position is that petitioners cannot claim either a superior right, title or interest "at the time of the commission of the acts which gave rise to the forfeiture," 21 U.S.C. § 853(n)(6)(A), or that they are "bona fide purchaser[s] for value" who were "reasonably without cause to believe that the property was subject to forfeiture," 21 U.S.C. § 853(n)(6)(B).

■ The legislative history of the criminal forfeiture statute provides: "Third parties who assert claims to criminally forfeited property, which in essence are challenges to the validity of the order of forfeiture, are entitled to a judicial determination of their claim." S.Rep. No. 225, 98th Cong., 1st Sess. 208 (1983), U.S.Code Cong. & Admin.News 1984, pp. 3182, 3391. It is clear from the Senate Report that petitioners' claims fall within the scope of persons which Congress recognized as being "entitled to a judicial determination of their claim," even though they cannot specifically make a claim for relief under Section 853(n)(6). The court having found petitioners to be a good faith provider of services, it follows that they have a legal interest in the property forfeited. Their status is, at least, equal to that of a general creditor, and therefore the court finds that they do have standing to present their claims.[1]

#### b. *Sixth Amendment*

The court having found that the petitioners have standing, the question before the court is whether counsel fees and costs are exempt from forfeiture under the Comprehensive Forfeiture Act of 1984, 21 U.S.C. § 853.

The court would also further note that counsel in its representation of William Reckmeyer did raise this issue before Judge Bryan of this court in the form of a motion for modification of the *ex parte* protective order obtained by the government. At that time, Judge Bryan told counsel they could present their claims in the form of a third-party petition under Section 853(n). In light of these facts, the court thinks it would be unfair to not give petitioners standing at this time to hear their claims.

---

1. This ruling is consistent with the court's ruling on the Petition of William Reckmeyer in which it held that Section 853(n)(6)(A) provided standing for all general creditors to make claims which may rebut the government's presumption of forfeitability under Section 853(d). See Memorandum Opinion dated February 5, 1986, at 13. The only difference here, is that the petitioners are challenging the reach of the entire forfeiture statute as it applies to attorney's fees and not the forfeitability of property under a particular section of the statute.

Four other district courts have addressed this issue, albeit in a pretrial context. In *United States v. Rogers,* 602 F.Supp. 1332 (D.Col.1985), the government filed a petition for an order restraining transfer of property by defendants under an indictment alleging forfeiture under the Comprehensive Forfeiture Act of 1984. The court held that attorney's fees received in return for services legitimately rendered and not as part of an artifice or sham to avoid forfeiture were not subject to the forfeiture provisions. In *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985,* 605 F.Supp. 839 (S.D.N.Y.1985), the court refused to quash a government subpoena seeking information regarding defense counsel's fee arrangement with defendant in order to obtain information regarding potentially forfeitable assets. In addressing the question of forfeitability, the court, specifically declining to follow *Rogers,* held that the government is entitled to a preliminary order restraining attorney's fees under the Comprehensive Forfeiture Act. In *United States v. Badalamenti,* 614 F.Supp. 194 (S.D.N.Y.1985), the court, in ruling on a defendant's motion to quash a trial subpoena *duces tecum* served upon defense counsel, held that the government may not seek a special verdict as to the forfeiture of attorney's fees under 18 U.S.C. § 1963 or 21 U.S.C. § 853 and may not rely on forfeiture in support of the subpoena at issue. Finally, in *United States v. Ianniello,* 85 Cr. 115 (S.D.N.Y. Sept. 3, 1985) (slip op.) the defendants sought and obtained an order declaring that attorneys' fees are exempt from forfeiture under 18 U.S.C. § 1963.[2]

■ This court agrees with the reasoning of the *Rogers, Badalamenti,* and *Ianniello* courts, and does not believe that Congress intended that the Comprehensive Forfeiture Act of 1984 would encompass bona fide legal fees paid to a criminal defendant's attorney. Such an application of the Act would in all likelihood violate the Sixth Amendment while not furthering any Congressionally desired ends of the statute. Absent some clear indication in the statute or legislative history that Congress did address this issue, it seems inconceivable that they intended the Forfeiture Act to be applied in this manner.

As the court noted in *Badalamenti,* a literal reading of Section 853 would seem to encompass legal fees. Section 853(a) provides that any person convicted of a violation of the federal drug laws shall forfeit *"any* property" which constitutes a proceed or was used to facilitate the criminal activity or, in the case of a person engaging in a continuing criminal enterprise, *"any* of his interest in, claims against, and property or contractual rights affording a source of control over" the enterprise. 21 U.S.C. § 853(a) (emphasis supplied). The statute does not specifically exempt counsel fees. The legislative history of the statute does, however, touch on this issue. The House Judiciary Committee Report states:

> Nothing in this section is intended to interfere with a person's Sixth Amendment right to counsel. The Committee, therefore does not resolve the conflict in District Court opinions on the use of restraining orders that impinge on a person's right to retain counsel in a criminal case.

H.R.Rep. No. 845, pt. 1 98th Cong., 2nd Sess. 19 n. 1 (1984). This passage, appears to modify the broad language in the statute so that it will not be read as a Congressional affirmation that forfeiture of attorney's fees is constitutionally permissible. It appears that Congress did not intend to take a position regarding the forfeitability of attorney's fees through this legislation, but rather decided to leave the resolution of this issue to the courts. *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985,* 605 F.Supp. at 849–50 n. 14. The broad language of the Section 853(a), which

---

**2.** 18 U.S.C. § 1963 is the RICO forfeiture provision which was included in the Comprehensive Forfeiture Act of 1984 and is a mirror of 21 U.S.C. § 853. The cases discussing forfeiture of attorneys' fees under 18 U.S.C. § 1963 are therefore fully applicable to forfeitures under 21 U.S.C. § 853.

speaks in terms of "any property" of the defendant, should not therefore be read as a Congressional statement that attorney's fees in a criminal case are subject to forfeiture under this Act. This court's finding that the forfeiture of attorney's fees violates the Sixth Amendment is therefore not inconsistent with the Congressional intent behind the Comprehensive Forfeiture Act, it appearing that it was Congress' intent all along that the courts would resolve this question.

■ The application of Section 853 to encompass bona fide attorney's fees would violate a defendant's Sixth Amendment rights in two ways. First, it would violate the defendant's right to obtain counsel of his choice. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *United States v. Inmann*, 483 F.2d 738 (4th Cir.1973) (Sixth Amendment includes right to reasonable opportunity to obtain, and be represented by an attorney of one's choosing where defendant can do so from his own resources). Second, it would create inherent conflicts of interest between the attorney and his client, and would chill the free flow of information between attorney and client, resulting in a deprivation of the defendant's right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Ianniello*, slip op. at 12–13; *United States v. Rogers*, 602 F.Supp. at 1349.

It cannot be disputed that the application of the third-party forfeiture provisions to attorneys' fees will restrict a defendant's ability to obtain counsel of choice. *See* Justice Department Guidelines on Forfeiture of Attorneys' Fees, 38 Crim.L.Rep. (BNA) 3001, 3002 (Oct. 2, 1985). Indeed, the notice provisions of Section 853(n)(6)(B) and the "relation-back" doctrine of Section 853(c), as construed and applied by the government, will deprive a defendant of counsel of choice no less effectively than if the government simply prohibited a defendant from hiring a lawyer. Attorneys will not represent a defendant if they know that, upon his conviction, their fees will be subject to forfeiture or that, as in the instant case, due to a restraining order, they cannot be compensated for legal services rendered prior to and including trial, and are later prohibited from asserting an interest in fees which otherwise would have been paid.

■ The right to obtain counsel of one's choosing is not absolute, but "must be carefully balanced against the public's interest in the orderly administration of justice." *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir.1981). *See also United States v. Burton*, 584 F.2d 485, 488–89 (D.C.Cir. 1978) (counsel of choice may only be deprived where compelling need to assure prompt effective and efficient administration of justice); *United States v. Phillips*, 699 F.2d 798, 801–02 (6th Cir.1983) (prosecution must show important interest adversely affected by permitting chosen counsel to proceed).

■ In this court's opinion, there is no legitimate countervailing government interest which would be served by the forfeiture of bona fide attorney's fees. The purpose of the criminal forfeiture statute is to strip racketeers and drug dealers of their "economic bases" upon conviction. *See* S.Rep. 98–225 at 191; *see also Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). The relation-back provision of Section 853(c) authorizes the court to set aside illusory or fraudulent transfers so that a defendant cannot, prior to conviction, avoid forfeiture by transferring assets to a nominee. *See* S.Rep. 98–225 at 209 n. 47. Exempting legitimate attorney's fees from forfeiture would not undermine these purposes because "[a]n attorney who receives funds in return for services legitimately rendered operates at arm's length and not as part of an artifice or sham." *United States v. Rogers*, 602 F.Supp. at 1348, and therefore a defendant who is found guilty will still be separated completely from his economic base.

■ Subjecting attorney's fees to forfeiture is more likely to impede, rather than advance, the orderly administration of justice. The forfeiture of attorney's fees

would likely cause chosen counsel to withdraw, leading to delays, disruption of the criminal proceeding, and further creating serious problems for already overburdened public defenders. It is further doubtful that any member of the private bar could afford to take on a complex RICO or CCE case under the Criminal Justice Act, since that Act places limits on the amount which can be paid as attorney's fees.[3] Finally, subjecting attorney's fees to forfeiture would give the government the power to decide whether a defendant will be represented by a particular counsel of his own choice. This would follow from its power to add a RICO or drug charge, include a broad list of assets allegedly subject to forfeiture, and inform defense counsel that he is "on notice." Given the potential for prosecutorial abuse or manipulation, such a veto power over the defendant's choice of counsel is clearly intolerable. *See United States v. Rogers, supra,* 602 F.Supp. at 1350 (application of forfeiture provisions to attorney's fees violates due process because: "The government would possess the ultimate tactical advantage of being able to exclude competent defense counsel as it chooses. By appending a charge of forfeiture to an indictment under RICO, the prosecutor could exclude those defense counsel which he felt to be skilled adversaries"). Ultimately, therefore, forfeiture of attorney's fees would undermine the adversary system itself, by producing an imbalance of powers that would violate the due process clause of the Fifth Amendment. *See Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973) (due process requires "balance of forces between the accused and his accuser"); *Gandy v. Alabama,* 569 F.2d 1318, 1321 (5th Cir.1978) (defendant's due process protection includes "fair opportunity to be represented by counsel of his own choice").

As the court stated in *Badalamenti,* the denial of choice of counsel is only the beginning of the problems that the government's position would raise. The many conflicts of interest created by the attorney having a pecuniary interest in the outcome of a criminal case would almost certainly deny the defendant his unqualified right to effective assistance of counsel. *See Strickland v. Washington,* 104 S.Ct. 2052 (1984); *United States v. Hearst,* 638 F.2d 1190, 1193 (9th Cir.) *cert. denied* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

Many conflicts are readily apparent. To name a few, the attorney's obligation to thoroughly investigate his client's case would conflict with his interest in not learning facts tending to inform him that his fee will be paid with proceeds of an illegal activity; the attorney's obligation to negotiate a guilty plea which is in his client's best interest may conflict with his desire to have his client enter a plea that does not involve forfeiture; the attorney's desire to fight the forfeiture claiming he was "reasonably without cause to believe that the property was subject to forfeiture" would conflict with his obligation to maintain his client's confidences. *United States v. Badalamenti,* 614 F.Supp. 194, 196–197 (S.D. N.Y.1985).

The possibility of an attorney appearing as a third-party petitioner in a Section 853(n) hearing also undermines the attorney-client relationship, further impinging on the right to counsel. The threat of an attorney having to disclose information obtained from his client will chill the openness of attorney-client communications. *Rogers,* 602 F.Supp. at 1349. If an attorney advised his client of the possible ramifications of the disclosure of this information to him, the free flow of information would be even further chilled depriving the de-

---

3. The availability of court-appointed counsel under the CJA is also inadequate because, due to threat of forfeiture of attorney's fees, individuals would be deprived of the opportunity to obtain any legal representation before they are officially charged or rendered "financially unable" to hire their own counsel. Thus, during the pendency of a grand jury investigation, a defendant, who is not only presumed innocent but has not even been charged with a crime, could not obtain the advice of counsel on such matters as whether to assert his Fifth Amendment rights.

fendant of effective representation. *Ianniello,* slip op. at 12–13.

In summary, the court finds that the Comprehensive Forfeiture Act does not encompass the forfeiture of bona fide attorney's fees of the defendant. Such a construction of the statute would not violate the Sixth Amendment, and is not contrary to the legislative intent of Congress. Having already found that Caplin & Drysdale was a good faith provider of services for a value of $170,512.99, the court will direct the government to pay Caplin & Drysdale $170,512.99 out of the forfeited assets of Christopher Reckmeyer.

An appropriate Order will issue.