**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Antonia CAMPOS, Jose Campos, Milk–O–Mat, Inc., Defendants–Appellants.**

Nos. 86–1798, 86–2011.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 28, 1987.

Decided Oct. 5, 1988.

As Amended Nov. 7, 1988.
Rehearing and Rehearing En Banc
Denied Dec. 2, 1988.

Michael J. Rex argued, Birmingham, Mich., for defendants-appellants in No. 86–1798.

Mark L. Teicher (argued), Southfield, Mich., for defendants-appellants in No. 86–2011.

Gary M. Maveal, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellee in Nos. 86–1798, 86–2011.

Before JONES, WELLFORD and GUY, Circuit Judges.

WELLFORD, Circuit Judge.

These cases, consolidated for appeal, present the sole issue of whether unsecured creditors, under the circumstances of this case, may assert claims for reimbursement in property forfeited to the government pursuant to 21 U.S.C. § 853. In reviewing the district court's decision that Jose and Antonia Campos have not stated a recognizable claim under 21 U.S.C.

§ 853(n)(6), we recognize that few cases have addressed this issue. We affirm.

## I.

Pablo and Jose Campos were indicted by a federal grand jury on May 10, 1985 for conspiring to distribute narcotics and for engaging in a continuing criminal enterprise. 21 U.S.C. §§ 841, 846, and 848. The government's case showed that Pablo Campos, through his ownership of three drug stores, used the drug stores to distribute narcotics for purposes other than medical uses. Jose Campos, Pablo's father, was charged with illegal conduct for helping set up corporations for these corrupt purposes.

Defendant Pablo Campos pled guilty and as part of his plea agreement agreed to forfeit his interest in the corporations. The criminal case against Jose Campos was dismissed pursuant to a settlement agreement. Pablo Campos' agreement provided that he would relinquish all common stock and other interests he held in seventeen corporations, which included the three drug stores. In addition, he would give up various commercial and residential properties, notes receivable, motor vehicles, and a boat. Jose Campos and his wife Antonia agreed to forfeit several of their assets, including a house and interests in the corporations. In their written assignments of interest to the government, however, Jose and Antonia reserved the right to seek compensation for services rendered to the corporations as employees[1] pursuant to 21 U.S.C. § 853(n)(1).

Following the plea agreements the district court entered a judgment and order of forfeiture. The government, in accordance with 21 U.S.C. § 853(n)(1), published notice of the forfeiture and directed all creditors with claims against the property to file petitions asserting the claims with the district court. Jose and Antonia Campos filed

---

**1.** Jose Campos' agreement provides in relevant part:

[T]hat [he] shall have the right to petition the [Court] pursuant to 21 U.S.C. § 853(n)(1) ... that he shall be permitted to prove to the Court any salary or wages that remain unpaid from [the forfeited corporations] as a result of work performed by him and that remain un-

paid as of the date of conveyance by himself to the United States of America.

Antonia Campos' agreement provides that she "shall have the right to petition the [Court] under 21 U.S.C. § 853(n)(1)(2) and prove such salary remaining unpaid as of the date of the conveyance by her to the United States."

claims alleging unpaid wages of $180,726.18 for bookkeeping services rendered to the corporations. Another claimant was petitioner Milk–O–Mat, which filed a claim totalling $138,254.30. This amount, Milk–O–Mat asserted, represented a debt of $108,154.30 on open account with three of the forfeited drug stores and $30,100.00 for the value of milk coolers the drug stores were allowed to use as long as they did business with Milk–O–Mat.[2] All petitions sought to set aside the forfeiture pursuant to 21 U.S.C. § 853(n)(6).[3]

Following a hearing, the district court granted the government's motion to dismiss all appellants' claims for failure to state a claim upon which relief could be granted, and confirmed the government's title to the drug store corporations. The court determined that the claims for wages and the debts owed Milk–O–Mat failed to allege "any legal interest in or bona fide purchase of the forfeited assets" within the meaning of § 853(n)(6). This appeal followed.[4]

Following notice of an order of forfeiture under the Comprehensive Crime Control Act of 1984, any person who asserts a sufficient interest in the forfeited property, other than the defendant, may petition the district court to adjudicate the validity of his alleged interest. Appellants in this case filed petitions under this provision and obtained a hearing. The issue is whether Jose Campos and/or Milk–O–Mat as unsecured creditors have a "legal right, title, or interest in the property" within the meaning of § 853(n)(6)(A) or may be "bona fide purchasers" within the meaning of § 853(n)(6)(B).

## II. BONA FIDE PURCHASER UNDER (B)

■ We are aware of only two courts which have previously addressed the question of whether a general creditor may qualify as a bona fide purchaser for purposes of § 853(n)(6)(B). *See United States v. Reckmeyer*, 836 F.2d 200 (4th Cir.1987) (petition for cert. filed April 11, 1988 (Nos. 86–5037/5070/5089)), and *United States v. Mageean*, 649 F.Supp. 820 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir.1987). Both of these courts found that general, unsecured creditors may have cognizable claims under that subsection. In *Reckmeyer*, the third party petitioner was the criminal defendant's father, as is Jose Campos. He had loaned his son money, which was evidenced by an unsecured promissory note, not knowing that his son was involved in illegal drug trafficking. The father had also purchased some real estate from his son, executing a promissory note payable to the son and the son's wife and paying cash directly to the owner of

---

2. The government agreed Milk–O–Mat was entitled to the milk coolers and returned them.

3. Under this provision of the Forfeiture Act, persons who seek to set aside forfeiture of properties of a criminal defendant must show that:

    (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

    (B) The petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6).

4. The government asserted that in addition to the petitions filed in district court, each of these appellants filed petitions for remission with the Attorney General. *See* Appellee's brief at 5, 6. These petitions, however, are not included in the joint appendix, and nothing in the briefs or joint appendix indicates whether the Attorney General has ruled on them, or if so, how he ruled. See *United States v. One 1961 Cadillac,* 337 F.2d 730 (6th Cir.1964); *see also McKeehan v. United States,* 438 F.2d 739, 742 n. 3 (6th Cir.1971) (citing *One 1961 Cadillac* ). Petitioners here have appealed the district court's ruling, not the Attorney General's decision. The district court decision is clearly subject to review on appeal. In any event, the purpose of § 853(n)(6), the provision at issue, was to provide for *judicial* resolution of certain claims described in that section rather than unreviewable administrative resolution. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 208–09, *reprinted in* 1984 *U.S.Code Cong. & Admin.News* 3182, 3391–92.

the property to satisfy the son's original promissory note. After the son was convicted, certain of his property was forfeited under the forfeiture statute, including the real estate his father had purchased and the accompanying promissory note. The father petitioned the district court to recover the principal due on the unsecured promissory note and an interest, to the extent that he paid cash, in the forfeited real estate.

The government argued in *Reckmeyer* that only persons with security interests in specific forfeited assets have standing to challenge a forfeiture under subsection (n)(6). The court rejected that contention, noting that a liberal construction of the statute required a finding that Congress intended unsecured creditors to recover, as long as they dealt at arms' length and without notice of criminal activity. 836 F.2d at 207, 208.

The *Reckmeyer* court also found that a strict construction precluding any recognition of unsecured creditors' claims would frequently lead to erroneous results and could result in unconstitutional deprivations of property. Under § 853(d) of the forfeiture statute, certain property is presumed forfeitable. The criminal defendant may present evidence to rebut that presumption, but third party claimants may not present any evidence under this section. If unsecured creditors are also precluded from challenging forfeitures under the third party petition provision, the court felt that the statute could operate to deprive these creditors of their property, thus raising "[s]erious due process questions." 836 F.2d at 206. *Reckmeyer* concluded that § 853(n)(6) must be construed to give standing for all general creditors to assert claims to rebut the presumption of forfeitability, holding that this interpretation would serve the salutary purpose of punishing the defendant without unfairly punishing innocent third parties. 836 F.2d at 208. The court of appeals in *Reckmeyer* therefore construed "bona fide purchaser for value" in 21 U.S.C. § 853(n)(6)(B) to

include persons giving "value to the defendant in an arms' length transaction." *Id.*

In *United States v. Mageean,* 649 F.Supp. 820 (D.Nev.1986), *aff'd without opinion,* 822 F.2d 62 (9th Cir.1987), the petitioners were unsecured trade creditors who had provided goods and services to the business that was forfeited pursuant to 18 U.S.C. § 1963. 649 F.Supp. at 827.[5] The government argued that petitioners, as general unsecured creditors, had no cognizable claim under § 1963(m)(6). The question before the *Mageean* court was whether the trade creditors could assert claims as "bona fide purchasers for value" under subsection (6)(B). 649 F.Supp. at 828.

While *Mageean* agreed with the government that unsecured trade creditors "do not, in a technical sense, have legal interests in the forfeited property," the court found, nevertheless, that Congress intended to protect innocent, "bona fide purchasers," and that the trade creditors were innocent parties who had entered bona fide, arms' length transactions with the business conducted by the criminal defendant whose property was forfeited. *Id.* The court asserted that as a result of the obligations arising from these bona fide transactions, the trade creditors should be considered as having "purchased 'property' i.e., their claims against [the business]." *Id.* at 829. The court then determined that "there is no reason that a good faith provider of goods and services cannot be a bona fide purchaser under the statute." *Id.*

*Mageean* found support for this conclusion from cases allowing attorneys who had provided legal services to defendants who forfeited assets to present claims against the forfeiture. *See, e.g., United States v. Reckmeyer,* 631 F.Supp. 1191, 1194, 1194 n. 1 (E.D.Va.1986) (*Reckmeyer II*) (allowing attorneys to assert claims for fees under § 853(n)(6) as a logical extension of the ruling in *Reckmeyer I* allowing general unsecured creditors to assert

---

Section 1963(m)(6) contains a provision for third party creditors that is identical to

§ 853(n)(6). *See* 18 U.S.C. § 1963(m)(6).

claims), *aff'd sub nom. United States v. Harvey*, 814 F.2d 905 (4th Cir.1987); *United States v. Bassett*, 632 F.Supp. 1308, 1315–18 (D.Md.1986) (finding attorneys' fees exempt from the forfeiture provisions of § 853), *aff'd sub nom. United States v. Harvey*, 814 F.2d 905 (4th Cir.1987); *United States v. Badalamenti*, 614 F.Supp. 194, 197–98 (S.D.N.Y.1985) (attorneys' fees exempt from forfeiture under §§ 1963 and 853); *United States v. Rogers*, 602 F.Supp. 1332, 1346–48 (D.Colo.1985) (attorneys' fees excluded from forfeiture under § 1963). *But see In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985*, 605 F.Supp. 839, 850 n. 14 (S.D.N.Y.) (attorneys' fees not excluded from forfeiture because, "[i]n the same manner that a defendant cannot obtain a Rolls–Royce with the fruits of a crime, he cannot be permitted to obtain the services of the Rolls–Royce of attorneys from these same tainted funds"), *rev'd on other grounds*, 767 F.2d 26 (2d Cir.1985).

The *Mageean* court observed:

> *Reckmeyer I* and the attorneys' fees cases stand for the proposition that a good faith provider of goods and services has a right to be paid for those goods and services under § 1963(m)(6). It is important to note that, like the trade creditors, the petitioners in these cases were not bona fide purchasers of property in the traditional sense. Instead, the attorneys had provided legal services to the defendants and, in *Reckmeyer I*, the petitioner loaned money to the defendant. In each of these cases, although the court recognized that the petitioners' claims might not be recognized by a literal interpretation of the forfeiture statutes, they held that the petitioners paid value and therefore their claims should be allowed.

649 F.Supp. at 830. For these reasons, *Mageean* concluded that the trade creditors could assert claims as "bona fide purchasers" under § 1963(m)(6)(B). *Id.* at 831.

*Mageean* relied on portions of RICO's legislative history that are not pertinent in this case. *See id.* at 828–29. That court stretched the meaning of the term "bona fide purchaser" by finding that the trade creditors had "purchased property" because they had "purchased" their claims against the debtor business. *Id.* at 829. We observe also that many of the attorneys' fees cases relied on in *Mageean* dealt with sixth amendment concerns that are irrelevant in this case. *Compare Reckmeyer II*, 631 F.Supp. at 1194 (separating the sixth amendment issue from the other issues discussed).

We believe that the *Reckmeyer* court's interpretation of § 853(n)(6)(B) resulted from its concern about a constitutional due process problem wherein claimants were contending that the assets seized by forfeiture were, in reality, "not forfeitable under the terms of the statute." 836 F.2d at 206. *Reckmeyer* then stated, "[W]e must resolve all ambiguities in the text of statute in a manner that will avoid this possible constitutional infirmity." *Id.* at 206. It then proceeded to construe the rights of a general creditor to be akin to those of a "bona fide purchaser for value," an interpretation which might at best be characterized as "fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932), *quoted in Reckmeyer*, 836 F.2d at 207. We do not have this specific "doubt of constitutionality raised," because no claimant in the instant case contends that the particular assets of Pablo Campos seized by the government were "not forfeitable." *See id.* at 206, 207. This may explain, then, why we have reached a different result from the *Reckmeyer* interpretation of § 853(n)(6)(B).

We accordingly hold that the petitioners are not "bona fide purchasers for value" within the meaning of the forfeiture statute at issue. With respect to this holding, we disagree with the rationale of *Reckmeyer* and *Mageean* herein discussed, that a trade creditor or an employee claiming wages may be deemed or analogized to a bona fide purchaser for value. We agree with the court in *Reckmeyer*, however, that the 1984 Criminal Forfeiture Act requires a liberal construction. This statute goes beyond the requirement that only an owner of property subject to seizure may contest

the forfeiture. It goes beyond giving only a party with a secured interest an opportunity to be heard with respect to a forfeiture of this type. One who has a "legal right" might be, for example, a party with a valid assignment or a beneficial interest through a trust, although not a legal title holder. One might have a "legal interest" through a spousal right or a recorded lien on the property sought to be forfeited.

We conclude that unsecured creditors such as Jose and Antonio Campos and Milk–O–Mat should not be allowed to assert claims under § 853(n)(6)(B). Such unsecured creditors do not fit the traditional definition of "bona fide purchasers." As this is a legal term of art, we are unwilling to give the phrase an unnatural meaning only for the purpose of subsection (n)(6)(B).[6] We recognize that this interpretation of the forfeiture statute mandates a harsh result, but it is a result frequently mandated by forfeiture procedures.

We also agree with the district court in *Reckmeyer* that "the words of Section (n)(6) must not read in a vacuum, but must be interpreted to effectuate the overall intent of the statute." 628 F.Supp. 616, 620 (E.D.Va.1986). It should be noted that the district court's decision in *Reckmeyer*, unlike the Fourth Circuit's decision, focused on whether an unsecured creditor could recover under § 836(n)(6)(A). While we refuse to hold that these claimants may recover under subsection (B), we do not necessarily reject the construction of § 853(n)(6)(A) adopted by the *Reckmeyer* district court.

### III. A LEGAL RIGHT, TITLE, OR INTEREST UNDER (A)

■ The district court did not discuss at length the meaning of subsection (A). A

person who asserts a "legal interest" in the forfeited property may petition the court for a hearing pursuant to § 853(n)(2). In order to prevail under § 853(n)(6)(A), the petitioner must establish that he has a "legal right, title, or interest in the property ... vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture." None of the petitioner creditors in this case have set out in their complaint any assertion that they claim any right, title, or interest in the property subject to forfeiture that is a *vested* right. *Black's Law Dictionary* 1402 (5th ed.1979) defines a "vested interest" as "[a] present right or title to a thing, which carries with it an existing right of alienation, even though the right to possession or enjoyment may be postponed to some uncertain time in the future, as distinguished from a future right, which may never materialize." *Black's* defines "vested" as "[f]ixed; accrued; settled; absolute. Having the character or given the rights of absolute ownership; not contingent; not subject to be defeated by a condition precedent." *Id.* at 1401. These claims are for debt as a trade creditor and as one allegedly arising out of an employment relationship: they are not claims of any *vested* right, title, or interest. There is no claim of vested entitlement in any petitioner to the forfeited property.

The other pertinent reference in subsection (A) regarding what kind of property interest must be asserted is that the interest must be superior to the interest of defendant Pablo Campos at the pertinent time. Such a *superior* interest would

---

**6.** The government argues that this case is governed by cases construing the civil statute, 21 U.S.C. § 881(a)(6), which demands an "ownership" interest in forfeited property before the exception will apply. *See United States v. $4,255,625.39,* 762 F.2d 895 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed. 772 (1986); *United States v. $47,875.00 in United States Currency,* 746 F.2d 291 (5th Cir.1984); and *United States v. $3,799.00 in United States Currency,* 684 F.2d 674 (10th Cir.1982). We believe, however, the government's reliance on

civil forfeiture cases in interpreting this case is not entirely sound. The civil forfeiture statute provides an exception only for "owners." *See* 21 U.S.C. § 881(a)(6). Application of the civil forfeiture statute may not be appropriate to this case concerning the proper interpretation of language in the criminal forfeiture statute, which does not require "ownership." The criminal statute does, however, require that a petitioning party have a particular defined "interest" or that a petitioner be a bona fide purchaser.

clearly be one in the nature of a lien, mortgage, recorded security device, constructive trust, valid assignment, or the like. Here, in contrast to such an interest, Jose and Antonia Campos have a claim for alleged unpaid wages, and Milk–O–Mat for a debt due and owing. No reasonable construction of the statutory language could enlarge these claims to the status of a superior right, title, or interest to that of the owner, Pablo Campos, at the time he committed the criminal acts.

Thus subsection (n)(6) protects only two classes of petitioners, those whose legal interests in the property were superior to the defendants at the time the interest of the United States vested through the commission of an act giving rise to forfeiture and "bona fide purchasers for value" without knowledge of the forfeitability of the defendant's assets.

*Reckmeyer*, 836 F.2d at 204.

While we agree with *Reckmeyer* that one occupying a position as general creditor may have standing to assert claims against forfeited property under § 853(n), we also agree with the above quoted statement from *Reckmeyer* that one must assert something more than being a general creditor; he must show that his legal interest in the property in question is vested or is superior to that of the criminal owner under subsection (A). One may have an "interest" in forfeited property (in the broad sense of being a general creditor) in order to have standing, but he also must make at least a prima facie showing of a "vested" or a "superior" interest to come within the meaning of subsection (A).

Again, as acknowledged in *Reckmeyer*, "Section 853 requires *more* than showing of a *legal interest* in the debtor's property." *Id.* at 205 (emphasis added). One seeking to establish a right under that section must show the required "interest" in the "property subject to forfeiture." *Id.* "Although general creditors can claim an interest in the debtors' *estates*, they cannot claim an interest in any *particular asset* that makes up the estate." *Id.* at 206 (emphasis added, footnote omitted).

It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtor's estate that frustrates general creditors who attempt to contest civil forfeitures.

. . . . .

Despite this broad construction of § 881(a)(6) unsecured creditors generally have been unsuccessful in pursuing claims against property subject to civil forfeiture. ... [T]he failure of general creditors to prevail in civil forfeiture actions has not turned on their inability to demonstrate a protectable interest in the property of the person whose conduct led to the forfeiture but rather on their inability to demonstrate that their interest lay in the *specific* asset being forfeited. *See, e.g., United States v. $4,255,000.00 in United States Currency*, 762 F.2d 895 (11th Cir.1985); *United States v. $47,-875.00 in United States Currency*, 746 F.2d 291 (5th Cir.1984); *United States v. One Piece of Real Estate*, 571 F.Supp. 723 (W.D.Tex.1983).

*Id.* at 206 n. 3 (emphasis in original).

A general creditor's interest under subsection (A) in a particular forfeited asset is no different conceptually from a tort claimant's position (even if reduced to an "enforceable judgment"). We would therefore apply the language of *Mageean* in this respect and find both claims insufficient to require a hearing.

The court agrees that only *legal interests* are recognized and concedes the trade creditors do not, in a technical sense, have legal interests in the forfeited property.

*Mageean*, 649 F.Supp. at 828 (emphasis added).

We have been referred to no court decision that has interpreted § 853(n)(6)(A) as stating that a trade or general creditor such as Milk–O–Mat or Jose and Antonia Campos have a "vested" interest or an interest "superior to the right, title, or interest" of the criminal defendant to specific forfeited assets when the criminal acts occurred. To the extent that *Mageean* indicated otherwise in analyzing a comparable

section (18 U.S.C. § 1963(m)(6)(A)), we disagree with that analysis.

The Supreme Court held in *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974), that forfeiture schemes are not rendered unconstitutional because of their applicability to the property interests of innocents. While the Court in *Calero-Toledo* dealt with a due process challenge to a Puerto Rican forfeiture statute, the principle expressed applies by analogy to this situation. In *Calero-Toledo* the innocent party was an owner concerned about the forfeiture of his leased vessel seized while carrying marijuana. After analysis of the historical background and development of the law of forfeiture, innocence of the owner of property was rejected as a defense to forfeiture despite the hardship involved. *See also Van Oster v. Kansas*, 272 U.S. 465, 47 S.Ct. 133, 71 L.Ed. 354 (1926); *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921); *United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890).

The Court made the following observation in this respect:

> To the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property.

> · · · · ·

> This is not to say, however, that the "broad sweep" of forfeiture statutes ... could not, in other circumstances, give rise to serious constitutional questions.... "[A] forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed." It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity,

but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; ...

416 U.S. at 687–88, 689, 94 S.Ct. at 2094–95 (citations and footnote omitted). *Calero-Toledo* also observed that "forfeiture incurred under 21 U.S.C. § 881(a), which served as the model for enactment of the disputed Puerto Rican statute ·... are subject to the remission and mitigation procedures of 19 U.S.C. § 1618." *Id.* at 690 n. 27, 94 S.Ct. at 2095 n. 27. Following *Calero-Toledo* we have held that forfeiture of an airplane preempts the claim of a secured (but unrecorded) interest holder not demonstrated to have been involved in the illegal use of the forfeited aircraft. *United States v. One 1951 Douglas DC-6 Aircraft*, 525 F.Supp. 13 (W.D.Tenn.1979), *aff'd*, 667 F.2d 502 (6th Cir.1981), *cert. denied sub nom. Ernesto Zaragoza Y. v. United States*, 462 U.S. 1105, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983).

We conclude, therefore, that the district court did not err in its conclusion that the claimants failed to allege or make a prima facie showing of any legal right, title, or interest in the forfeited property and thus no hearing or trial was mandated in respect to the claims made by Milk-O-Mat or Campos.

We accordingly AFFIRM the judgment of the district court.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I would follow the approach taken by the only other federal courts which have addressed the scope of property interests to be recognized under section 853(n). *See United States v. Reckmeyer*, 836 F.2d 200 (4th Cir.1987); *United States v. Mageean*, 649 F.Supp. 820 (D.Nev.1986). Because I am not persuaded by the majority's attempts to distinguish these cases, I respectfully dissent.

In my view, the *Reckmeyer* and *Mageean* courts correctly emphasize the importance of interpreting the language of section 853(n)(6) to effectuate the overall intent of the criminal forfeiture statute. Thus, while Congress certainly intended to

make it easier for the Government to establish a nexus between the illegal activity and the defendant's property and, accordingly, easier to obtain a forfeiture, it also intended to protect the interests of bona fide purchasers who had no knowledge of the illegal activity. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 208, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3391. Moreover, Congress expressly indicated that the "provisions of [section 853] shall be *liberally construed* to effectuate its remedial purposes." 21 U.S.C. § 853(*o*). The *Reckmeyer* and *Mageean* courts, in construing section 853(n)(6)(B) to allow general creditors who gave value to forfeited corporations in arms-length transactions, to recover as bona-fide purchasers, have, in my view, given proper effect to the expressed congressional intent.

In light of Congress's goal in enacting the forfeiture provision, coupled with its intent that the provision be liberally construed, I agree with the Fourth Circuit's conclusion in *Reckmeyer* that the word "purchaser" in the term "bona fide purchaser for value" was *not* meant to "operate as a limitation on the class of those who having engaged in arms'-length transactions with the defendant were entitled to protection of their interests." *Reckmeyer*, 836 F.2d at 208. In order to avoid anomolous results and to effectuate the legislative intent, "the term 'bona fide purchaser for value' must be construed liberally to include all persons who [gave] value to the defendant in an arms'-length transaction *with the expectation that they would receive equivalent value in return.*" *Id.* Such persons, if they are without knowledge of the potential forfeitability of the defendant's assets, are entitled to recover under section 853(n)(6)(B).

Further, and perhaps more importantly, the courts in *Reckmeyer* and *Mageean* have settled on a statutory construction that avoids the obvious due process problems which would otherwise plague the forfeiture statute. *See, e.g., Reckmeyer*, 836 F.2d at 206. It seems to me that these constitutional concerns are quite serious because, while the statute allows the criminal *defendant* to present evidence to rebut the presumption of forfeitability created by section 853(d), a general creditor, like these petitioners, who lends money or otherwise provides assets to the defendant may not be heard at the stage of the proceeding in which the forfeiture decision is made. *See* 21 U.S.C. § 853(k) (barring third parties from intervening in the criminal trial). Therefore, unless the general creditor is included within the group of persons who can assert cognizable claims under section 853(n)(6), that person's property interests can be compromised by an *in personam* judgment resulting from litigation to which he or she was not a party. Such a construction of section 853(n) is not consistent with due process. Indeed, in my view, as a general rule of fundamental fairness, the more relaxed the Government's burden becomes in obtaining a forfeiture of a criminal defendant's property, the more crucial it is for courts to recognize and protect the claims of innocent third parties who might have a legitimate interest in that property.

The majority's reliance on *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), does not persuade me otherwise. While in that case the forfeiture of a yacht belonging to an innocent lessor may have had "the desirable effect of inducing [the lessor] to exercise greater care in transferring possession of [his] property," *id.* at 688, 94 S.Ct. at 2084, this policy concern is certainly not applicable with regard to Milk-o-Mat's sale of *milk* on account to the forfeited drug store corporation. In my mind, for the reasons discussed above, the instant case is more appropriately viewed as one of those situations, recognized in *Calero–Toledo*, which give rise to "serious constitutional questions." 416 U.S. at 689, 94 S.Ct. at 2094.

For the foregoing reasons, I would remand the case to the district court for a determination of whether Milk-o-Mat and/or the Camposes were without knowledge of the potential forfeitability of the corporation's assets. If they were without such knowledge—and it is likely that at least Milk-o-Mat could make such a show-

ing—then they are entitled to recover under section 853(n)(6)(B).