UNITED STATES of America,

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. No. 91–0655 (JHG).

United States District Court, District of Columbia.

Feb. 23, 1993.

Stefan D. Cassella, Daniel Stark, Latrena Carrington, Trial Attys., Asset Forfeiture Office, U.S. Dept. of Justice, Washington, DC, for U.S.

Robert W. Merkle, Merkle & Magri, P.A., Tampa, FL, for petitioners.

***ORDER DISMISSING THE MARCH 18, 1992 AND SEPTEMBER 4, 1992 PETITIONS OF LEE SCARFONE, PATRICIA SCARFONE, ALSA INTERNATIONAL, INC. AND BANDITBALL, INC.***

JOYCE HENS GREEN, District Judge.

Presently pending are the United States' motions to dismiss the Petitions for Hearing to Adjudicate Right, Title or Interest in Forfeited Property filed by Lee Scarfone, Patricia Scarfone, ALSA International, Inc., and Banditball, Inc. ("the Scarfones") on March 18, 1992 and September 4, 1992. Upon con-

sideration of the motions to dismiss and all filings relating thereto, the motions are granted and the Scarfones' petitions are dismissed.

## BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered. Paragraph 1(e) of the Order provides that the four corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement. Attached to the January 24, 1992 Order as Exhibit A was a list of specific BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a supplemental Order on January 31, 1992 which directed immediate seizure of the specific assets listed therein.

In satisfaction of 18 U.S.C. § 1963(*l*)(1), and to inform third parties of potential rights to seek recovery of assets declared forfeited, the United States published notice of the Order of Forfeiture, as amended, during the period between February 13, 1992 and March 27, 1992 in eleven major United States newspapers including the *Wall Street Journal,* the *New York Times,* the *Chicago Tribune,* and the *Los Angeles Daily Journal. See* Government's Compliance with Order of May 8, 1992, filed May 12, 1992. In addition, personal notice was sent to over 340 persons and entities as late as April 3, 1992. *Id.*

On March 18, 1992, the Scarfones filed a petition to amend the January 24, 1992 Order of Forfeiture based on the following allegations. In or about 1985, BCCI issued to Lee Scarfone and ALSA International, Inc. ("ALSA") a $1.95 million loan in exchange for $250,000 in prepaid interest. The loan was secured by a $1.95 million first mortgage on a three acre piece of property ("the property") appraised at $5 million and owned by ALSA. ALSA sought the loan to acquire a United States Football League team, the Tampa Bay Bandits, to purchase real estate, and for other business ventures.

In an attempt to extinguish their debt with BCCI and to secure additional financing for their· investments, the petitioners entered into negotiations with Regency Bank of Florida and others. The Scarfones claim that while the negotiations were pending, BCCI breached contractual duties owed to them by conveying to Regency its mortgage interest in the property. Regency soon after commenced foreclosure on the property. The Scarfones contend that as a result of BCCI's breaches and Regency's foreclosure, they lost significant assets and their ability to develop other financial interests. The Scarfones also allege that BCCI's breaches forced them into bankruptcy. They seek to recover:

> funds ordered forfeited by this court to the extent that the Petitioners' funds either paid directly to BCCI by the Petitioners or by REGENCY BANK pursuant to the assignment of the first mortgage on the Petitioners' property by BCCI to REGENCY BANK, have been commingled with such forfeited funds, and/or to the extent that such funds being the property of BCCI are property subject to claims for compensatory and punitive damages in an amount exceeding $5 million for the wrongful acts of BCCI and its officers directed against the Petitioners.

March 18, 1992 Petition at 4–5. The Scarfones allege no interest in any specific asset ordered forfeited by the Court in this case.

In accordance with a briefing schedule issued by the Court, the government filed a Motion to Dismiss Petitions of BCCI Tort Petitioners, which addressed the Scarfones' March 18, 1992 petition as well as petitions filed by Banco Central de Reserva del Peru; Shrichand Chawla, Leo D. Curran, Willy Hermans and Red Circle Investment, Ltd., Jaleh Khorassanchy, Amit Pandya, Soha, Inc., Idriss Devco, Inc., and S & L Gentrade, Inc.; and the Republic of Panama. The court-appointed fiduciaries for the four corporate defendants subsequently filed a memorandum of law addressing the same petitions. The Scarfones filed responses to the government's motion and the court-appointed fiduciaries' memorandum, and the government filed a reply.

On June 24, 1992, the government filed a Motion to Amend Order of Forfeiture to Include Additional Property, seeking forfeiture of assets in newly discovered bank accounts held in the names of the corporate defendants, proceeds from the sale of a condominium purchased with resources provided by a corporate defendant, money remaining in a "BCCI Legal Fund" established by one of the corporate defendants for the defense of its employees' legal interests, a bankruptcy distribution to one of the corporate defendants, and assets held at various New York financial institutions in the name of ICIC Investments Ltd., a sibling corporation of defendant ICIC (Overseas) Ltd. The Court granted the government's motion and issued an Order of Forfeiture on July 29, 1992. The United States subsequently provided notice of the Order to potential claimants.

The Scarfones filed their second petition on September 4, 1992 which was identical to their first petition except for the fact that it sought to recover funds ordered forfeited on July 29, 1992. On December 28, 1992, the government filed a Motion to Dismiss Round Two Petitions of BCCI Tort Petitioners, which addressed the Scarfones' second petition as well as second petitions filed by Banco Central de Reserva del Peru and Shrichand Chawla, Leo D. Curran, Willy Hermans and Red Circle Investment, Ltd., Jaleh Khorassanchy, Amit Pandya, Soha, Inc., Idriss Devco, Inc., and S & L Gentrade, Inc. Because all three of the second petitions were identical to the corresponding first petitions, the government's round two motion merely incorporated by reference its earlier motion to dismiss. On January 8, 1993, the Scarfones filed an opposition to the government's round two motion which reiterated the arguments made in their earlier response. The government filed a reply on January 27, 1993.

Although the Court indicated it would grant a request for oral argument on the government's motions to dismiss, neither side made such a request.

## DISCUSSION

As an initial matter, the court-appointed fiduciaries have submitted documents which establish that Lee Scarfone is presently involved in a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Florida. The fiduciaries argue that in light of the appointment of a bankruptcy trustee in that action, Mr. Scarfone no longer has standing to participate in this case. Counsel for the Scarfones, however, have submitted evidence to support an assertion that the Bankruptcy Court has authorized them to represent the interests of the Scarfones in this proceeding. For purposes of resolving the government's motions to dismiss, the Court will assume that the bankruptcy proceeding does not bar the Scarfones, through present counsel, from participating in this case.

Following the entry of an order of forfeiture pursuant to 18 U.S.C. § 1963(a), a third party may petition the issuing court for a hearing to amend the order to exclude certain property in which the third party claims a legal right, title, or interest. *See* 18 U.S.C. § 1963(*l*)(2). Subsection 1963(*l*)(6) sets forth the elements which the petitioner must prove in order to recover assets previously declared forfeited and states in full:

> If, after [a] hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.[1]

Accordingly, a petitioner may recover forfeited assets under subsection 1963($l$) in two ways. First, the petitioner may succeed by establishing all of the following:

(a) a "legal right, title, or interest"

(b) in property ordered forfeited, and

(c) that such "legal right, title, or interest" was either

(1) vested in the petitioner rather than the defendant at the time of the commission of the acts which gave rise to the forfeiture, or

(2) superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture.

In the alternative, a petitioner may succeed by establishing all of the following:

(a) that it is a "bona fide purchaser for value" of

(b) a "legal right, title, or interest"

(c) in property ordered forfeited, and

(d) was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture.

Only by establishing all elements of one of the two avenues may a third party obtain court-ordered relief from an order of forfeiture. See United States v. Lavin, 942 F.2d 177, 187 (3d Cir.1991) ("Those third parties who fall outside of both [avenues], regardless of how sympathetic they are, must petition the Attorney General for relief."). If a third party fails to allege in its petition all requisite elements, the court may dismiss the petition without providing a hearing. See United States v. Campos, 859 F.2d 1233, 1240 (6th Cir.1988); United States v. Mageean, 649 F.Supp. 820, 825 (D.Nev.1986), aff'd, 822 F.2d 62 (9th Cir.1987); S.Rep. No. 225, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Ad. News 3374, 3391.

In its motions to dismiss, the government characterizes the legal interests asserted by the Scarfones as ones arising from tortious conduct, and contends that tort petitioners cannot recover under § 1963($l$). The Scarfones concede that tort claimants cannot recover under the statute, but argue that rather than tort victims, they should be considered unsecured creditors whose legal interests arose from BCCI's breaches of contractual duties. Though the Scarfones' characterization of the nature of their interests appears to be more accurate than the government's, the Scarfones would not be entitled to recover under § 1963($l$) even if they were considered to be unsecured creditors.[2]

As this Court recognized in its January 7, 1993 Order Addressing the Government's Motion to Dismiss Petitions of Depositors and Additional Depositors, an unsecured creditor does not possess an interest in any specific asset of a debtor. Instead, such a creditor merely has a general interest in

---

1. Title 18 U.S.C. § 1963($l$)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the provision providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted those two provisions differently. Given the extreme similarity of the two statutes and the relative dearth of caselaw interpreting and applying § 1963($l$), the Court's opinion relies on reasoning contained in § 853(n) cases as well as in § 1963($l$) cases.

2. Given the Scarfones' concession that tort claimants cannot recover under § 1963($l$), the Court does not discuss that issue in detail. The Court has, however, recently issued an opinion holding that tort claimants are unable to recover under § 1963($l$)(6)(B). See Order Dismissing the April 24, 1992 and September 2, 1992 Petitions of Banco Central de Reserva Del Peru, issued February 22, 1993.

the debtor's entire estate. *See United States v. Schwimmer,* 968 F.2d 1570, 1581 (2d Cir. 1992) ("A general creditor has no interest in a particular asset or particular funds that is either vested or superior to a defendant's. He may have a right to receive payment, but he does not have a property interest superior to defendant's in any particular asset or funds...."); *United States v. Reckmeyer,* 836 F.2d 200, 206 & n. 3 (4th Cir.1987) ("Unlike secured creditors, general creditors cannot point to any one specific asset and claim that they are entitled to payment of the value of that specific asset. General creditors instead enjoy a legal interest in the entire estate of the debtor."); *United States v. Mageean,* 649 F.Supp. 820, 828 (D.Nev. 1986), *aff'd,* 822 F.2d 62 (9th Cir.1987). Because general creditors are unable to assert interests in specific assets, they cannot assert legal rights, titles, or interests in property ordered forfeited, at least in situations where a defendant's entire estate is not subject to forfeiture. *See Reckmeyer,* 836 F.2d at 206 n. 3 ("It is the dilemma of linking their interest to a specific asset rather than the problem of asserting a legal interest in the debtors' estate that frustrates general creditors who attempt to contest civil forfeitures."); *United States v. Campos,* 859 F.2d 1233, 1239 (6th Cir.1988) (" 'The court agrees that only legal interests are recognized and concedes the trade creditors do not, in a technical sense, have legal interests in the forfeited property.' ") (quoting *Mageean,* 649 F.Supp. at 828).

Given that the Court's Order of Forfeiture reaches only property located in the United States and not the entire estates of the four corporate defendants, the Scarfones, as unsecured creditors, cannot establish that the interests which they seek to recover were ordered forfeited by this Court. Consequently, they cannot satisfy all elements necessary for recovery under § 1963(*l* ), and their petitions must be dismissed.

### CONCLUSION

For reasons stated above, it is hereby

ORDERED that the petitions of Lee Scarfone, Patricia Scarfone, ALSA International, Inc., and Banditball, Inc., filed April 24, 1992 and September 4, 1992, are dismissed.

IT IS SO ORDERED.