UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.

Crim. No. 91–0655 (JHG).

United States District Court, District of Columbia.

Aug. 19, 1993.

Stefan D. Cassella, Robert C. Dalton, U.S. Dept. of Justice, Washington, DC, for U.S.

Alan G. Greer, Floyd Pearson Richman Greer Weil Brumbaugh & Russomanno, Miami, FL, Thomas K. Equels, Holtzman, Krinzman & Equels, Coral Gables, FL, Jane Moretz Edmisten, Washington, DC, for defendants.

### ORDER DISMISSING THE MARCH 13, 1992 PETITION OF THE REPUBLIC OF PANAMA

JOYCE HENS GREEN, District Judge.

Presently pending is the United States' motion to dismiss the petition for a hearing to adjudicate interests in forfeited property filed by The Republic of Panama ("Panama"). Upon consideration of the motion, all filings relating thereto, and oral argument presented at the June 1, 1993 hearing, the motion is granted and the petition is dismissed.

### BACKGROUND

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered. Paragraph 1(e)' of the Order provides that the corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the

course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement. Attached to the January 24, 1992 Order as Exhibit A was a list of specific BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a supplemental Order on January 31, 1992 which directed immediate seizure of the specific assets listed therein.

In satisfaction of 18 U.S.C. § 1963($l$)(1), and to inform third parties of potential rights to seek recovery of assets declared forfeited, the United States published notice of the Order of Forfeiture, as amended, during the period between February 13, 1992 and March 27, 1992 in eleven major United States newspapers including the *Wall Street Journal,* the *New York Times,* the *Chicago Tribune,* and the *Los Angeles Daily Journal. See* Government's Compliance with Order of May 8, 1992, filed May 12, 1992. In addition, personal notice was sent to over 340 persons and entities as late as April 3, 1992. *Id.*

Panama filed its petition on March 13, 1992, seeking to recover approximately $4.1 million forfeited from a specific account at Security Pacific International Bank ("SPIB") in New York. The petition also requests that more than $19 million forfeited from capital equivalency accounts formerly maintained by BCCI (Overseas) Limited at Capi-

tal Bank in Miami and First Florida Bank in Tampa be returned to the State of Florida for disbursement to victims of BCCI. Panama's asserted interests are based on allegations that its former leader, Manuel Antonio Noriega, embezzled more than $23 million worth of funds which were the property of the Panama National Guard and secretly deposited them with BCCI. The petitioner has attempted to trace portions of the $23 million through a complex series of numerous transactions and alleges that $4.1 million of the stolen money was eventually deposited into the SPIB account.

In accordance with a briefing schedule set by the Court, the government filed its Motion to Dismiss Petitions of BCCI Tort Petitioners, which also addressed claims filed by Banco Central de Reserva del Peru ("Peru")[1]; Shrichand Chawla, Leo D. Curran, Willy Hermans and Red Circle Investment, Ltd., Jaleh Khorassanchy, Amit Pandya, Soha, Inc., Idriss Devco, Inc., and S & L Gentrade, Inc.[2]; and Lee Scarfone, Patricia Scarfone, ALSA International, Inc., and Banditball, Inc. ("the Scarfones")[3]. The court-appointed fiduciaries for the four corporate defendants subsequently filed a memorandum of law addressing the same claims. The petitioners filed an opposition to the government's motion and the fiduciaries' memorandum, and the government filed a reply. Oral argument was heard on June 1, 1993, at which time Panama conceded that its request relating to the capital equivalency accounts became moot upon this Court's approval of the settlement between the United States and the State of Florida.[4] Transcript of June 1, 1993 Motion Hearing ("Tr.") at 12. Accordingly, only Panama's claim to the SPIB funds is presently at issue.

## DISCUSSION

■ Title 18, United States Code, § 1963 sets forth an orderly procedure by which

1. The Court dismissed Peru's petitions on February 22, 1993, holding that tort claimants could not be considered "bona fide purchasers for value" under 18 U.S.C. § 1963($l$)(6)(B). *United States v. BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. 111 (D.D.C.1993).

2. The Court has dismissed the petitions filed by these claimants in a separate Order issued this date.

3. The Court dismissed the Scarfones' petition on February 23, 1993, holding that as unsecured creditors, they could not assert the requisite interest in forfeited property. *United States v. BCCI Holdings (Luxembourg), S.A.,* 1993 WL 170640 (D.D.C.1993).

4. The Court approved the settlement in an Order issued July 29, 1992.

third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. The provision granting standing to parties seeking to amend an order of forfeiture to exclude certain property states:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice ..., whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

18 U.S.C. § 1963(*l*)(2). Section 1963(*l*)(6) sets forth the substantive elements which a third party must establish to successfully obtain amendment of an order of forfeiture and provides in full:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.[5]

Only by establishing standing and satisfaction of all requisite elements of either § 1963(*l*)(6)(A) or (B) may a party obtain judicial relief from an order of forfeiture. *See United States v. Schwimmer,* 968 F.2d 1570, 1584 (2d Cir.1992) ("The *only* role of the District Court is to amend the order of forfeiture where a genuine property interest of the sort specified in § 1963(*l*)(6) is demonstrated.") (emphasis in the original); *United States v. Lavin,* 942 F.2d 177, 187 (3d Cir. 1991) ("Those third parties who fall outside of the [limited avenues of relief], regardless of how sympathetic they are, must petition the Attorney General for relief.") If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. Campos,* 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean,* 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion,* 822 F.2d 62 (9th Cir. 1987); S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad. News 3374, 3391.

 The plain language of 18 U.S.C. §§ 1963(*l*)(2) and 1963(*l*)(6) prevents any third party petitioner from obtaining an amendment to an order of forfeiture unless it can establish a legal interest in property which was the subject of the order. Panama has conceded this fact and, notwithstanding its claim to have lost more than $23 million deposited with BCCI, asserts *only* an ownership interest in the $4.1 million forfeited on January 24, 1992 from the SPIB account numbered 07012001. *See* Republic of Panama's Petition for a Hearing to Determine Its Interest in Forfeited Monies, Including Points and Authorities at 4. With the support of hundreds of pages of documents attached to its petition, Panama has made a colorable claim that at least $15 million of the $23 million allegedly stolen by Noriega was deposited in various accounts at BCCI, subsequently transferred to banks other than BCCI, and then deposited into an account at

---

**5.** Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the statute providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted these two provisions differently. Because the two subsections are identical and because of the relative dearth of caselaw interpreting and applying § 1963(*l*), the Court's opinion relies on reasoning contained in § 853(n) cases as well as in § 1963(*l*) cases.

**32**

Manufacturers Hanover Trust in New York held by Capcom Financial Services, Ltd. ("Capcom"), a financial institution conducting millions of dollars in business per day as a brokerage house and investment firm.[6] Unfortunately for Panama, however, once the $15 million was deposited into the Capcom account, it was immediately mingled with millions of other dollars obtained from other sources.[7] Although Panama alleges that the $15 million transferred to the SPIB account in late September 1988 originated from the Capcom account, it admits that it is impossible to establish whether those assets were Panamanian funds embezzled by Noriega or whether they entered the account from some non-Panamanian source. Tr. at 15.[8] Given this traceability problem, which Panama concedes cannot be rectified by discovery, Panama cannot establish that it holds an interest in SPIB account number 07012001. Its petition must therefore be dismissed.

### CONCLUSION

For the reasons stated above, it is hereby

ORDERED that the March 13, 1992 petition filed by **The Republic of Panama** is dismissed.

IT IS SO ORDERED.

---

**6.** For purposes of resolving the motion to dismiss, the Court will accept as true Panama's assertion that it can trace the $15 million into the Capcom account.

**7.** When counsel for Panama was asked at the hearing whether any non-Panamanian money was placed in the Capcom account during the relevant time frame, counsel responded, "Tons. I don't know the exact figure, but there was quite a bit." Tr. at 15.

**8.** When the Court inquired, "[H]ow can you be sure it was Panamanian money that was transferred from the New York account to the Security Pacific Overseas BCCI account?", counsel responded, "Well, you can't." Tr. at 15.