## UNITED STATES of America

v.

BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, and International Credit and Investment Company (Overseas) Limited, Defendants.

### Crim. Action No. 91–0655 (JHG).

United States District Court, District of Columbia.

Sept. 23, 1996.

See also 46 F.3d 1185.

U.S. Department of Justice, Stefan D. Cassella, Deputy Director, Asset Forfeiture Office, for Government.

Robert W. Merkle, Gerard J. Roble, Merkle & Magri, P.A., Tampa, FL, for Lee Scarfone and Patricia Scarfone, individually, ALSA International, Inc. and Banditball, Inc.

Syed Chiragh Ali Shah, pro se.

Aqeel Ahmed Siddiqui, pro se.

Dr. W. Schaubel, pro se.

Owen Silvious, pro se.

E.H. Rinaca, Jr., pro se.

Mustafa A. Qureshi, pro se.

### ORDER GRANTING MOTIONS TO DISMISS

JOYCE HENS GREEN, District Judge.

Presently pending are the United States' Motions to Dismiss ("Motion to Dismiss") the petitions ("L–Claims") of (1) Lee Scarfone and Patricia Scarfone, Individually, ALSA International, Inc., a Florida Corporation, and Banditball, Inc., a Florida Corporation; (2) Syed Chiragh Ali Shah; (3) Aqeel Ahmed Siddiqui; (4) Dr. W. Schaubel; (5) Owen Silvious; and (6) E.H. Rinaca, Jr.; (7) Allen A. Evans; and (8) Mustafa A. Qureshi. The government has moved to dismiss each of the petitioners' claims on the grounds that each is either a general creditor who lacks standing under 18 U.S.C. § 1963($l$)(2) or has otherwise failed to state a claim. For the reasons expressed below, the Motions to Dismiss will be granted.

### Background

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, ac-

cepted the pleas of guilty of the four corporate defendants (collectively "BCCI") and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered.

Paragraph 1(e) of the Order provides that the corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of the Court–Appointed Fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement.

Attached to the First Order of Forfeiture was a listing of BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a First Supplemental Order on January 31, 1992, which directed immediate seizure of the specific assets listed therein. The Court has since amended the Order of Forfeiture to include additional assets, including property set forth in Second and Third Supplemental Lists of Forfeited Property. *See* Order of Forfeiture of July 29, 1992 (Second Order of Forfeiture); Order of Forfeiture of August 19, 1993 (Third Order of Forfeiture); Fourth Order of Forfeiture (December 21, 1994). Attached to the Fourth Order of Forfeiture, which is relevant to the petitioners' L–Claims presently before the Court, was the Fourth Supplemental List of Forfeited Property.

In compliance with 18 U.S.C. § 1963(*l*)(1) and to inform third parties of their potential rights to seek recovery of assets declared forfeited in the Fourth Order of Forfeiture, the United States published notice of the Order of Forfeiture, as amended, during the period from January 24, 1995 until April 14, 1995 in eleven major newspapers of general circulation including the *Wall Street Journal,* the *New York Times,* the *International Herald Tribune,* the *Los Angeles Daily Journal,* the *Washington Post,* and *USA Today.* *See* United States' Notice to the Court, at 1 & Exhibit A (filed Apr. 3, 1995). In addition, personal notice was sent to 267 persons and entities. *See* United States' Notice to the Court, at Exhibit A (filed Mar. 20, 1995).

On April 23, 1996, this Court held hearings on the Fourth Round Petitions, making the United States' motion to dismiss ripe.[1]

### 1. Scarfones' L–Claim

The Scarfones, whose L–Claims in Rounds One, Two and Three were dismissed by this Court on the ground that the Scarfones were unsecured general creditors of BCCI, *United States v. BCCI Holdings (Luxembourg), et al.,* 841 F.Supp. 1, 4–5 (D.D.C.1993) (Rounds One and Two); *United States v. BCCI Holdings (Luxembourg), et al.,* 919 F.Supp. 31, 33–34 (D.D.C.1996) (Round Three), have asserted the same L–Claim in Round Four. The Scarfones' petition stems from a lawsuit, presently stayed, in which they have asserted claims against, *inter alia,* BCCI. According to the amended complaint in *Scarfone, et al., v. REGENCY BANK, et al.,* 89–912–Civ–T–13C (M.D.FL.), a copy of which is attached to their L–Claim, the Scarfones allege that BCCI breached its fiduciary duty and, along with others, violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c).

In general, the Scarfones aver that BCCI loaned them $1,950,000.00, which was secured by an interest in the property of ALSA International. BCCI later assigned this interest to REGENCY BANK who purchased the ALSA International property at a foreclosure sale. The Scarfones contend that as

---

**1.** None of the instant petitioners requested oral argument or appeared at the hearing held on April 23, 1996.

a result of BCCI's breaches and REGENCY BANK's foreclosure, they lost significant assets and their ability to develop other financial interests. The Scarfones also allege that BCCI's breaches forced them into bankruptcy.

The Scarfones have not identified an interest in a specific asset. Instead, they seek to recover interest paid to BCCI, other monies and damages. Specifically, they claim a "right, title and interest in the funds ordered forfeited by this court to the extent that the Petitioners' funds either paid directly to BCCI by the Petitioners or by REGENCY BANK pursuant to the assignment of the first mortgage on the Petitioners' property by BCCI to REGENCY BANK, have been commingled with such forfeited funds, and/or to the extent that such funds being the property of BCCI are property subject to claims for compensatory and punitive damages in an amount exceeding $5 million for the wrongful acts of BCCI and its officers directed against the Petitioners." *Id.* at ¶ 10.

The government has moved to dismiss the Scarfones' L–Claim, since it is "substantially identical to the claim filed by the same parties in response to earlier orders of Forfeiture in this case." Motion to Dismiss Miscellaneous Round 4 L–Claims, at 2 (citing *United States v. BCCI Holdings (Luxembourg), S.A.,* 841 F.Supp. 1 (D.D.C.1993)). In reply, while admitting that they are general creditors, the Scarfones ask the Court to reconsider her earlier ruling. *See* Petitioners' Response, at 1 & 9.

## 2. General Depositors

In the Fourth Round, L–Claims have been filed by four general depositors with BCCI. First, **Syed Chiragh Ali Shah** renews the L–Claim that he filed in the Third Round, *see United States v. BCCI Holdings (Luxembourg),* 919 F.Supp. 31, 34–35 (D.D.C.1996), claiming an interest in $2047.50. This sum represents the amount in a check drawn on his account in BCCI–Lahore, Pakistan on June 29, 1991, to the favor of his grandson, Syed Shahzad Murtaza. On July 2, 1991, BCCI–Lahore directed American Express, New York, through its correspondent bank, First American Bank of New York, to debit

its account in the amount of $2,047.50 and credit the same to the account of Syed Shahzad Murtaza in his local account, the First Bank of Alabama. However, before the monies were transferred, BCCI's assets were shut down.

Second, **Aqeel Ahmed Siddiqui** filed a Fourth Round L–Claim for the amount of $28,500. Siddiqui's claim is identical to the claims he filed in Rounds Two and Three, both of which were dismissed. *See United States v. BCCI Holdings (Luxembourg), S.A., et al.,* 833 F.Supp. 17, 20 (D.D.C.1993) (Round Two); *United States v. BCCI Holdings (Luxembourg), et al.,* 919 F.Supp. 31, 33–34 (D.D.C.1996) (Round Three). His L–Claim stems from two drafts of $3,500 and $25,000 drawn on June 24, 1991 from his account at BCCI–Colombo, Sri Lanka, to Security Pacific International Bank of New York. Before the drafts were honored by Security Pacific International Bank, BCCI's assets in the United States and abroad were frozen on July 5, 1991.

Third, **Dr. W. Schaubel** filed a Round Four L–Claim, seeking the return of $30,-664.60 from three certificates of deposit (account numbers 03002640, 02402642, and 01402640) on deposit with BCCI (Luxembourg).

Fourth, **Owen Silvious** petitions the Court to remit $168,638.00, which represents the balance of a five-year time deposit account held by BCCI (New York). Silvious asserts a constructive trust theory to recover his "whole life savings," L–Claim, at ¶ 7, contending that the "deposit was obtained by fraudulent misrepresentations of defendant BCCI" as to BCCI's financial condition. *Id.* at ¶¶ 6 & 7.

## 3. Miscellaneous Claims

The L–Claims submitted by two claimants defy general categorization. In the L–Claim submitted by **E.H. Rinaca, Jr.,** the petitioner states: "I believe that properties forfieted (sic) by B.C.C.I.–Criminal No. 91–0655 (JHG) to be those left to my grandfather, J.I. Miller, to be devised to me E.H. Rinaca Junior. (I believe my grandfather may have been crook'd (sic); he was very sad for many

years) This is to the best of my knowledge." The L–Claim submitted by **Allen A. Evans** consists of an invoice (marked "paid in full" in the amount of $199) and a copy of the Fourth Round publication notice with three accounts circled and the handwritten words "capital punishment (fine)" at the top of the page. Finally, **Mustafa A. Qureshi** claims an interest in $78,578.69. Qureshi is a former BCCI senior officer who was employed at various locations including Montreal, Miami, Los Angeles, Abu Dhabi and London. Because the California Liquidators of BCCI only paid him $32,650.55 of a $111,229.24 claim, he has filed the instant L–Claim seeking the balance.

### Discussion

Title 18, United States Code, Section 1963 sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial resolution of their claims. The provision granting standing to parties seeking to amend an order of forfeiture to exclude certain property states:

> Any person other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

18 U.S.C. § 1963(*l*)(2).

Section 1963(*l*)(6) sets forth the substantive elements that a third party must establish to obtain amendment of an order of forfeiture. This section provides:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and

such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.[2]

██ A petitioner must first establish standing. Only by establishing standing and satisfying the requisite elements of either Subsection 1963(*l*)(6)(A) or Subsection 1963(*l*)(6)(B) may a party obtain judicial relief from an order of forfeiture. *See United States v. BCCI Holdings (Luxembourg), S.A., et al.*, 46 F.3d 1185, 1188 (D.C.Cir.), *cert. denied sub nom., Chawla v. United States*, —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995); *United States v. Schwimmer*, 968 F.2d 1570, 1584 (2d Cir. 1992); *United States v. Lavin*, 942 F.2d 177, 187 (3d Cir.1991). If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir.1987); S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983).

██ The petitioners are general creditors of BCCI, and under the law in this Circuit, they simply lack standing to assert claims under 18 U.S.C. § 1963. *United States v. BCCI Holdings (Luxembourg), S.A., et al.,*

---

**2.** Title 18 U.S.C. § 1963(*l*)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the statute providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted these two provisions differently. Because the two subsections are identical and because of the relative dearth of case law interpreting and applying Section 1963(*l*), the Court's opinion relies on the reasoning contained in Section 853(n) cases as well as that of Section 1963(*l*) cases.

46 F.3d 1185, 1191–92 (D.C.Cir.), *cert. denied sub nom. Chawla v. United States,* —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). The Court of Appeals has expressly rejected the Scarfones' alternative argument that they need not identify a particular asset because of the seizure of all of BCCI's domestic assets, 46 F.3d at 1192, and the Court has refused to adopt Silvious' constructive trust theory. *Id.* at 1191. Finally, the miscellaneous petitions will be dismissed, because the claimants have failed to allege all of the elements necessary to state a claim. *See Campos,* 859 F.2d at 1240; *Mageean,* 649 F.Supp. at 825; S.Rep. No. 225, 98th Cong., 1st Sess. 191, 208 n. 46 (Sept. 12, 1983).

The government's Motions to Dismiss will be granted, and the petitions will be dismissed.

### Conclusion

For the reasons stated above, it is hereby

**ORDERED** that the United States' Motions to Dismiss are granted as to the following petitions:

(1) Lee Scarfone and Patricia Scarfone, Individually, ALSA International, Inc., a Florida corporation, and Banditball, Inc., a Florida corporation;

(2) Syed Chiragh Ali Shah;

(3) Aqeel Ahmed Siddiqui;

(4) Dr. W. Schaubel;

(5) Owen Silvious;

(6) E.H. Rinaca, Jr.;

(7) Allen A. Evans; and

(8) Mustafa A. Qureshi.

IT IS SO ORDERED.